UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA CAROLINA PAR-ROSALES, and ETHAN JAFETH PAR, minor child,<br><br>               Petitioners,<br><br>v.<br><br>WILLIAM P. BARR, et al.,<br><br>               Respondents. | Case No.: 19cv1844-LAB (JLB)<br><br>**ORDER CONSOLIDATING CASES; AND**<br><br>**ORDER DENYING RENEWED EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER** |

**Consolidation**

When this case was originally filed, the initiating document consisted of a motion for a temporary restraining order (TRO). Through a docketing error, the accompanying petition for writ of habeas corpus was erroneously filed under case number 19cv1848. The two cases were then deemed related and assigned to the undersigned judge. The Court now **ORDERS** the two cases consolidated. All future filings should be in the docket for this case. The Clerk is directed to file the initiating petition in case 19cv1848 (docket no. 1 in that case) in the docket of this case.

**Renewed TRO Motion**

The Court denied an emergency TRO, pointing out that Petitioners had waited until literally the day of their hearing before the immigration judge (IJ) to file

their motion. This left the government with no time to respond. While there might be good reasons for waiting so long and filing the petition and TRO motion only at the last moment, Petitioners had not explained what those were. After denying the motion without prejudice, the Court required additional briefing, as well as a status update that was intended to make clear the need and appropriateness of immediate relief.

The status update represented that the government would not return Petitioners to Mexico until further notice. Then on October 16, the government filed a notice stating that it intended to return Petitioners to Mexico to await the outcome of their asylum application. Petitioners have now filed their second emergency TRO motion (the "Motion").

**Background**

Petitioners are a mother and minor child who are Guatemalan nationals who on June 28, 2019 entered the United States without inspection in Arizona, where they were apprehended and immediately requested asylum. They were put into the Migrant Protection Protocols (MPP) program and sent back into Mexico. They were paroled back into the United States and eventually on August 12, 2019 appeared before Immigration Judge Lee O'Connor, who continued their case until September 26 in order to allow their newly-retained counsel to become familiar with the case. (Pet., ¶ 15.)

Petitioners assert that Judge O'Connor's practice is to illegally and improperly terminate proceedings, sending asylum-seekers back to Mexico where they must begin the process anew. According to Petitioners, Judge O'Connor has said no other relief is available to them, and he cannot fix the problem. Therefore, they conclude, this Court is the only entity with the power to fix the problem.

Petitioners' response does not explain their lengthy delay in filing their first TRO motion. All it says is that "the delayed filing of the TRO [motion] was due to the fact that Petitioners['] counsel did not receive this case until Monday,

September 23, 2019." (Pet'r Response (Docket no. 7.) at 4:1–2.) Bearing in mind that Judge O'Connor on August 12 gave Petitioners over six weeks to allow their then newly-retained counsel time to become familiar with the case, this explanation raises more questions than it answers. But what it does not do is to show any adequate reason for the lengthy delay and last-minute filing.

The Response addresses the factors set forth in *Winter v. Nat'l Res. Def. council, Inc.*, 555 U.S. 7, 20 (2008), but falls short. In particular, they have not shown any likelihood of success on the merits, and have not shown a likelihood of irreparable harm.

Petitioners make the unsupported contention that Mexico's high crime rate means they are likely to be attacked, kidnapped, or killed. While Mexico's border regions are known for high crime, Petitioners have not shown they are any more likely to be harmed than any of the millions of people who voluntarily live in or visit Mexico's border regions. Nor have they shown that Mexican authorities are likely to return them to Guatemala while they are in the process of seeking asylum. They also assert, with no support or explanation, that while they are in Mexico they are prevented from preparing and working on their cases.

Respondents on October 7 filed their opposition to the original TRO motion. (Docket no. 8.) Among other things, the response included a substantial section addressing lack of jurisdiction, including jurisdictional bars under 8 U.S.C. §§ 1252(a)(2)(B)(ii) and (g), and an argument that as parolees who are in the U.S. at their own request, Petitioners are not "in custody" for habeas purposes. The "likelihood of success" analysis also argues that this Court lacks jurisdiction to hear claims arising under the consent decree in *Reno v. Flores*, 507 U.S. 292, 306 (1993), which Petitioners rely on. *See Hernandez Culajay v. McAleenan*, ___ F. Supp. 3d ___, 2019 WL 3889737, at *6 (E.D. Pa., Aug. 19, 2019) (holding that the only district court with jurisdiction to enforce the *Flores* consent decree is the U.S. District Court for the Central District of California).

1 | Although the Court's order did not provide for a reply brief, Petitioners could have sought leave to file one to address jurisdiction, or they could have amended their petition. In its current state, the Petition merely agues that the Court has jurisdiction because a federal question is present. It does not address the jurisdictional bars, and its assertion that Petitioners are in custody is wholly conclusory. Nor does it suggest any reason why the Court has authority to enforce the *Flores* consent decree.  Bearing in mind that jurisdiction is presumed to be lacking, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), Petitioners should have addressed jurisdictional questions as soon as they became apparent.

More generally, both the Petition and Motion rely heavily on unsupported or only thinly-explained conclusions. Although some of the arguments may be valid, separating the genuine from the hypothetical can be difficult. Petitioners' counsel are in the best position to explain the bases for their claims, and future filings should do so.

Finally, while Petitioners' counsel are understandably concerned for their clients' welfare, they must avoid making unauthorized *ex parte* contact with chambers.  On October 17, for example, they emailed a proposed order to chambers without copying opposing counsel as required,[1] and included a request for expedited consideration. They also called chambers without opposing counsel on the line, to inform the Court that the motion was urgent. The Court has

/ / /
/ / /
/ / /
/ / /

---

[1] *See* Electronic Case Filing Administrative Policies and Procedures Manual, § 2(h).

admonished counsel already that it is unwilling in this case to entertain one side's request without giving the other side notice and an opportunity to be heard.

The Motion is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated: October 18, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge